UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OCTAVIA MITCHELL, as PERSONAL REPRESENTATIVE of the ESTATE of IZAEL C. JACKSON and OCTAVIA MITCHELL, individually, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO and UNKNOWN CHICAGO POLICE OFFICERS, <br><br> Defendants. | Case No. 21 C 870 <br><br> Judge Martha M. Pacold |

## ORDER

Plaintiff Octavia Mitchell, acting on behalf of herself and as personal representative for the Estate of her son Izael Jackson, filed suit seeking relief from judgment in an earlier lawsuit where a jury held that defendant City of Chicago and multiple Chicago police officers did not use excessive force against Jackson and were not otherwise liable for Jackson's death. Mitchell alleges that the City and multiple "unknown police officers" that were "assigned to the Mobile Strike Force Unit" (collectively, "Defendants") committed fraud on the court in the earlier suit by misrepresenting what the Chicago Police Department had done with DNA swabs taken from a gun found at the scene of Jackson's death. [6] ¶¶ 21, 29–30.[1]

The City moved to dismiss the amended complaint under Rule 12(b)(6). [19]. For the reasons that follow, the motion is granted, the amended complaint is dismissed without prejudice, and Mitchell is granted leave to amend.

## BACKGROUND

In 2010, Jackson was a passenger in a vehicle pulled over by Chicago police for a simple traffic violation. *Mitchell v. City of Chicago*, 862 F.3d 583,

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

584–85 (7th Cir. 2017) ("*Mitchell II*"). Jackson exited the car. As the Seventh Circuit described the officers' trial testimony:

> According to the officers' testimony, Jackson immediately began firing a weapon in the direction of the squad cars. Officer Belcher returned fire through the windshield of his patrol car, while Sergeant Cascone radioed for backup. At this point, the car sped away, leaving Jackson behind. While looking over his shoulder and shooting in the direction of the police cars, Jackson began running away from the officers. As Jackson fled, Officer Belcher fired two or three shots at him through the windshield of the police car. Officer Gonzales raised his rifle and began to fire at Jackson's back as well. Jackson fell to the ground and stopped moving. The officers approached and Officer Lopez kicked the gun, later determined to be a Glock Model 19 9-millimeter semi-automatic handgun, out of Jackson's hand and handcuffed him. Paramedics were called, and Jackson was transported to Stroger Hospital where he died the next morning.

*Id*. at 585.

### A. Original Suit and Trial Court Proceedings

In 2011, Mitchell filed suit against the City and individual Chicago police officers "bringing claims of excessive force under the Fourth Amendment and the Illinois wrongful death statute." *Mitchell II*, 862 F.3d at 585. "Mitchell alleged that the shooting death of her son was unjustified because Jackson never had a gun and never shot at the officers." *Id*.

Fact discovery closed in January 2013. *Id*. at 586. Several months later, in August 2013, Mitchell served a subpoena on the Illinois State Police Division of Forensic Sciences regarding DNA swabs that had been taken from the gun found at the scene of the shooting. *Id*. Specifically, Mitchell sought the deposition of a "person with knowledge regarding the policies and practices of DNA testing and determining as to when and if testing is conducted on DNA samples collected by Chicago police officers . . ." *Id*. (ellipsis in original). The district court granted the City's motion to quash the subpoena as untimely. *Id*.

During the jury trial, the crime scene investigator "testified that he took DNA swabs from the" gun found at the scene. *Id*. at 585. "For unknown reasons, the DNA swabs were never tested by the Illinois State Police, the agency responsible for testing forensic evidence in this case. Mitchell failed to identify experts challenging the City experts' testimony [connecting

2

Jackson to the gun] and did not seek testing of the DNA swabs." *Id.* at 585–86.

At the close of evidence, the court directed a verdict as to the police officers who did not fire weapons at Jackson, and the jury returned a verdict in favor of the City and remaining officers on all claims. *Id.* at 586.

After the verdict was rendered, Mitchell moved for a new trial under Federal Rule of Civil Procedure 59. *Mitchell v. Belchor*, 11-cv-2741, 2014 WL 3805771, at *1 (N.D. Ill. July 31, 2014) ("*Mitchell I*"). Among other arguments, Mitchell asserted that the district court erred by prohibiting her from "ask[ing] defendant's witness about DNA swabs of the guns." *Id.* at *2. The court rejected the argument "because neither of the defendant police officers was involved in the investigation" and "[t]he only issue at trial was whether the officers were unjustified in shooting Jackson"—meaning "the manner and scope of investigation was irrelevant." *Id.* The court also denied the remainder of Mitchell's motion. *Id.* at *3.

### B.    Seventh Circuit Appeal

Mitchell appealed. She argued that the district court erred in quashing the subpoena to the Illinois State Police regarding its DNA testing practices. *Mitchell II*, 862 F.3d at 586. In 2017, the Seventh Circuit affirmed the district court, holding that "[e]ven if Mitchell's subpoena sought relevant evidence, Mitchell failed to offer good cause for the subpoena's tardiness." *Id.* "[T]here was ample opportunity for Mitchell to seek discovery of the Illinois State Police's testing protocol, or tests of DNA swabs taken from the gun. Mitchell failed to do so in the allocated time frame. Instead, she waited several additional months past the deadline with no good cause for this delay." *Id.* at 586–87. The Seventh Circuit affirmed the other district court rulings Mitchell challenged on appeal. *Id.* at 587.

### C.    First Rule 60 Suit

In 2018, Mitchell filed a new lawsuit under Rule 60 seeking relief from judgment in her original suit, and the case was reassigned to the same judge who handled Mitchell's original suit. *Mitchell v. City of Chicago*, No. 18-cv-948, ECF 7 (N.D. Ill. Mar. 7, 2018). Mitchell alleged that, in the original suit, the defendants "committed a fraud on the court by asserting at both the trial before this Court and in the appeal proceedings before the Seventh Circuit that two cotton swabs used to collect Izael Jackson's DNA from the pistol were never tested." *Mitchell v. City of Chicago*, No. 18-cv-948, 2018 WL 11260470, at *2 (N.D. Ill. June 12, 2018) ("*Mitchell III*"). Mitchell "allege[d] that the defendants' representations were false and that the swabs were

3

tested and the findings were reported to the Chicago Police Department" in a written report sometime between August 2010 and October 2011. *Id.*

Relying on *Mitchell I*'s and *Mitchell II*'s holdings regarding the quashed subpoena to the Illinois State Police about DNA testing, the court observed that "there is no lie attributable to the defendants as a fraud on the court where the testing and the results were never sought or were sought too late, though there appears to have been a failure of due diligence." *Id.*

The court ultimately dismissed Mitchell's suit for lack of jurisdiction. *Id.* Mitchell appealed to the Seventh Circuit but voluntarily dismissed the appeal shortly after it was filed. *Mitchell v. City of Chicago*, No. 18-2428, ECF 9 (7th Cir. 2018).

### D.    Present Suit

In 2021, Mitchell filed this suit under Rule 60 again alleging that Defendants defrauded the court in her original suit.[2] Mitchell alleges that Defendants "stated to the court orally and in writing that the DNA sample were sent to the state lab for testing and the state lab did not test the samples" but, in a 2019 letter, admitted that "the DNA samples were not sent to the state lab" and were actually "placed in a police evidence locker where [they] remained for nine years without being tested."[3] [6] ¶¶ 14, 20. Mitchell

---

[2] Mitchell is presently proceeding *pro se*, but the amended complaint was filed when Mitchell was still represented by counsel. [6]; [29]; [30]. Mitchell's counsel passed away, and she moved for the appointment of counsel. [29]. The court denied the motion without prejudice. [29]. Since then, Mitchell has not filed a renewed request for counsel. However, after the motion was denied, Mitchell filed a "rebuttal" in support of the motion. [33]. Mitchell's rebuttal does not expressly renew her request for appointed counsel but, to the extent Mitchell's filing could be construed as renewing the request for appointment of counsel, the request is denied. In addition to the issues identified in the court's order [29] denying recruitment of counsel (issues that Mitchell's rebuttal does not address), the court may consider the likelihood of success on the merits in determining whether to allocate the scarce resources of appointed counsel to any given case. *Watts v. Kidman*, 42 F.4th 755, 763–66 (7th Cir. 2022). The Seventh Circuit has emphasized that "[i]t is essential that district courts remain mindful, especially at the early stages of a case, that their evaluation of the plaintiff's claim is being made on uncounseled papers—early-stage pleadings written and submitted by litigants asking for the court's help due to incompetency, unfamiliarity with the law, or on the belief that a lawyer is almost certain to be a better advocate." *Id.* at 766. Nonetheless, the complaint was prepared by counsel, and the likelihood of success on the merits (addressed later in this order) cuts against the recruitment of counsel here.

[3] The DNA samples were later tested, and the testing report states that "[t]he partial DNA profile . . . is consistent with a mixture of three or more individuals

alleges that this fraud allowed Defendants to shift the blame for the lack of testing to the Illinois State Police and maintain that they "had clean hands in that they did their duty and acted in good faith by sending the DNA samples to the state lab for testing." *Id.* ¶ 21. Mitchell asks that the court grant her relief from judgment in the original suit and either enter a judgment with monetary damages against the City or, alternatively, grant Mitchell a new trial. *Id.* ¶¶ 38–40.

The City moved to dismiss under Rule 12(b)(6). [19].

## LEGAL STANDARD

When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiff['s] favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 365–66 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 366 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he complaint's factual allegations must raise the claim above a mere 'speculative level.'" *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). Federal pleading standards do "not require detailed factual allegations, but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (second alteration in original) (internal quotation marks omitted).

## DISCUSSION

The Seventh Circuit has "set a high bar for what constitutes fraud on the court under Rule 60(d)(3)."[4] *Kennedy v. Schneider Elec.*, 893 F.3d 414, 420 (7th Cir. 2018). "Fraud on the court occurs only in the most extraordinary and egregious circumstances and relates to conduct that might be thought to corrupt the judicial process itself, such as where a party bribes a judge or inserts bogus documents into the record." *Citizens for Appropriate*

---

including at least one male contributor" but, "[d]ue to the possibility of allelic drop out, no conclusions can be made on this mixture profile." [31] at 11.

[4] The amended complaint does not appear to plead any claim under Rule 60(b). Even if it did, any such claim would be time-barred. Fed. R. Civ. P. 60(c)(1); *Mitchell III*, 2018 WL 11260470, at *1 (holding that any request for relief "[u]nder Rule 60(b) . . . would be untimely").

*Rural Roads v. Foxx*, 815 F.3d 1068, 1080 (7th Cir. 2016). "The fraud must have been the kind of fraud that ordinarily could not be discovered, despite diligent inquiry, within one year or even many years." *Kennedy*, 893 F.3d at 420; *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011) (similar). "Fraud on the court is actionable only if it prejudices the adverse party." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010).

The amended complaint does not state a claim for fraud on the court because it does not allege prejudice. The amended complaint alleges that the Defendants committed fraud on the court

> when they intentionally and knowingly told and assured the court that the DNA samples were sent to the state lab for testing; and it was the state lab that caused the samples not to be tested, and that the Defendants had clean hands in that they did their duty and acted in good faith by sending the DNA samples to the state lab for testing.

[6] ¶ 21. In other words, Mitchell alleges that Defendants misrepresented their role in whether or not the DNA swabs were tested. *Mitchell I*, however, held that the court did not "err[] in preventing Mitchell from inquiring at trial about the scope of the investigation by the Illinois State Police" and testing of the DNA swabs because "neither of the defendant police officers was involved in the investigation. The only issue at trial was whether the officers were unjustified in shooting Jackson. Accordingly, the manner and scope of investigation was irrelevant." 2014 WL 3805771, at *2. For the same reason, even if it had been disclosed that the Chicago Police Department had not sent the DNA swabs to the Illinois State Police for testing, that fact was irrelevant to determining Defendants' liability in the original suit, and Mitchell was not prejudiced by the alleged misrepresentation.

Separately, the amended complaint also does not state a claim because the alleged fraud could have been discovered with diligent inquiry through routine discovery. Records regarding whether the DNA swabs were sent to the Illinois State Police could have been obtained during Mitchell's original suit. Indeed, Mitchell served a subpoena on the Illinois State Police about its DNA testing practices but the court quashed the subpoena because it was not served until months after fact discovery closed, and "Mitchell failed to offer good cause for the subpoena's tardiness." *Mitchell II*, 862 F.3d at 586. The same is true here. During discovery, Mitchell could have sought records regarding whether the Chicago Police Department had sent the DNA swabs to the Illinois State Police but did not do so. Mitchell offers no explanation for why the documents she has since obtained could not have been uncovered during discovery in her original suit. *See Mitchell III*, 2018 WL 11260470, at

6

\*2 ("Here, there is no lie attributable to the defendants as a fraud on the court where the testing and the results were never sought or were sought too late, though there appears to have been a failure of due diligence.").

Apart from failure to state a claim, the City argues that the amended complaint should be dismissed with prejudice because it is barred by res judicata and issue preclusion based upon the court's dismissal of Mitchell's previous Rule 60 suit in *Mitchell III*. These arguments are unpersuasive. For res judicata, "only judgments on the merits preclude parties from litigating the same cause of action in a subsequent suit." *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000). *Mitchell III*, however, did not enter a judgment on the merits and instead dismissed for lack of jurisdiction. 2018 WL 11260470, at \*2. A dismissal for lack of jurisdiction can have issue preclusive effect but only on "the issue actually decided, namely the jurisdictional issue." *Perry*, 222 F.3d at 318. On the present record before the court, it is unclear what the precise issue was underlying *Mitchell III*'s jurisdictional holding. Given the unclear record, the court cannot determine conclusively whether issue preclusion applies at this time.

## CONCLUSION

The City's motion is granted, and the amended complaint is dismissed without prejudice. If Mitchell decides to file a second amended complaint, it is due by October 21, 2022. If Mitchell has questions about proceeding *pro se* or searching for an attorney, she may contact the Hibbler Help Desk, which can be reached at (312) 702-8825, or www.ilnd.uscourts.gov, and click on the link Information for People Without Lawyers.

Dated: September 23, 2022                         /s/ Martha M. Pacold